IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SELENE MATEOS and NOE MONTEMAYOR, on behalf of themselves and all other similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CV. NO. SA-12-CV-00529-DAE |
| SELECT ENERGY SERVICES, L.L.C., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404

On January 23, 2013, the Court heard Defendant's Motion to Transfer

Venue Pursuant to 28 U.S.C. § 1404 ("Motion").  Michael K. Burke, Esq.,

appeared at the hearing on behalf of Selene Mateos, Noe Montemayor and

Fernando Cedillo ("Plaintiffs"); James M. Cleary, Jr., Esq., appeared at the hearing

on behalf of Select Energy Services, L.L.C. ("Defendant" or "Select Energy").

After reviewing the Motion and the supporting and opposing memoranda, the

Court **DENIES** Defendant's Motion.  ("Mot.," Doc. # 7.)

1

BACKGROUND

Plaintiffs are former employees of Defendant Select Energy.  On May 30, 2012, Plaintiffs filed a complaint for relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., alleging that Defendant failed to pay them and other similarly situated safety coordinators overtime wages as required by the FLSA.  Defendant is an oil and gas service company headquartered in Houston that provides wellsite solutions, such as wellsite construction and rig logistics, to the oil and gas industry in Texas, Oklahoma, Arkansas, Louisiana, Colorado, and Pennsylvania.  (Mot. at 1–2.)  Plaintiffs claim that they and other safety coordinators employed by Defendant routinely worked in excess of forty hours per week.  ("Compl.," Doc. # 1 ¶ 12.)  Plaintiffs allege that Defendant was aware that Plaintiffs and other similarly situated individuals worked more than forty hours per week, but paid them a set amount regardless of the number of hours worked.  (Compl. ¶ 13–14.)  Defendant admits that its safety coordinators are paid a set weekly amount, but claims that the position is an administrative position and therefore exempt from the FLSA's overtime provisions.  (Doc. # 5 ¶ 1.)  Plaintiffs seek to certify a collective action under the provisions of the FLSA.  (Compl. at 5 ¶ 1.)  The three current Plaintiffs reside in and primarily worked in the Western District of Texas.  (Opp. at 1.)

2

On May 30, 2012, Plaintiffs filed the Complaint.  (Compl.)  On July 3, 2012, Defendant filed an Answer to Plaintiffs' Original Complaint.  (Doc. # 5.)  On July 31, 2012, Defendant filed the instant Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404.  (Doc. # 7.)  On August 8, 2012, Plaintiffs filed a Response in Opposition to Defendant's Motion ("Opp.," doc. # 8) and on August 15, 2012, Defendant filed a Reply ("Reply," doc. # 9).  At the hearing on January 23, 2013, Defendant cited to supplemental authority in support of its Motion, and with the Court's permission, Plaintiffs filed a response addressing Defendant's supplemental authority on January 25, 2013 (doc. # 15).

## STANDARD OF REVIEW

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  The party moving for transfer carries the burden of showing good cause.  See Humble Oil & Ref. Co. v. Bell Marine

3

Service, Inc., 321 F.2d 53, 56 (5th Cir. 1963); see also In re Volkswagen of Am., Inc., 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "Volkswagen II") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

        "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." Volkswagen II, 545 F.3d at 312.  If this requirement is met, the Fifth Circuit Court of Appeals has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "Volkswagen I") (citing to Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1982)).  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." Id.

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue.  Volkswagen II, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." Id. at 315.

DISCUSSION

As a preliminary matter, the instant action "might have been brought" in the destination venue.  Defendant seeks to transfer this case to the Southern District of Texas, Houston Division.  All agree that this action could have been filed originally in that district and division.  (Mot. at 2–3; Opp. at 2 n.7.)  Next, the Court must determine whether the various public and private factors militate in favor of transfer.

Defendant asserts that any level of deference to a plaintiff's choice of forum is inappropriate where, as here, the plaintiff seeks to certify the lawsuit as a collective action.  (Mot. at 4–5.)  A number of courts have held that a plaintiff's chosen forum is accorded less weight when the plaintiff seeks to represent a class of individuals.  See, e.g., In re Warrick, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("It is true . . . that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum . . . when an individual brings a derivative suit or represents a class, the name plaintiff's choice of forum is given less weight.") (internal citation omitted); Espenscheid v. DirectSat USA, LLC, 708 F. Supp. 2d 781, 787 (W.D. Wis. 2010) (same); cf. Koster v. Am. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) ("Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice.  But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action . . . , the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (discussing doctrine of forum non conveniens in the context of a derivative suit).  This Court agrees that Plaintiffs' forum choice

6

deserves less deference than the forum choice of a plaintiff bringing an individual claim.  However, "less deference is not the same thing as no deference."  <u>Blum v. Gen. Elec. Co.</u>, 547 F. Supp. 2d.  717, 726 (W.D. Tex. 2008) (quoting <u>Ravelo Monegro v.  Rosa</u>, 211 F.3d 509, 514 (9th Cir. 2000)).  If the Southern District of Texas, Houston Division, is not clearly more convenient than the Western District of Texas, San Antonio Division, the Court will respect Plaintiffs' choice.

I.   <u>Private Factors</u>

   A.   <u>Ease of Access to Sources of Proof</u>

      Defendant claims that the sources of proof necessary to establish or refute Plaintiff's allegations are located at Defendant's headquarters in Houston. (Mot. at 6.)  Specifically, originals of all written policies, procedures, employee personnel records, and payroll records are located at Defendant's headquarters in Houston.  (Mot. Ex.  1 ¶ 5–6.)  Defendant's Human Resources Department and potential witnesses employed by that department are also located in Houston. (Mot. at 6.)

      Plaintiffs dispute Defendant's claim that the primary sources of proof are located in Houston, arguing that because Defendant treats safety coordinators as exempt employees, the records kept at its headquarters will not provide evidence of the hours worked.  (Opp. at 5.)  Plaintiffs maintain that the best source of proof

7

will in fact be witnesses who can testify as to the actual day-to-day job duties of
the safety coordinators employed by Defendant, such as the safety coordinators
themselves and other employees who work in the field.  (Id.)

   The Court finds that this factor weighs very slightly in favor of
transfer.  If, as Defendant asserts, original corporate records are needed to establish
or refute Plaintiffs' claims, those records will be most readily accessible in
Houston.  However, Plaintiff's argument that the primary sources of proof will not,
in fact, be written records is persuasive.  Furthermore, this factor is accorded only
limited weight.  "Typically, the accessibility and location of sources of proof
should weigh only slightly in this Court's transfer analysis, particularly since these
factors have been given decreasing emphasis due to advances in copying
technology and information storage."  Mohamed v. Mazda Motor Corp., 90 F.
Supp. 2d. 757, 778 (E.D. Tex. 2000) (citing to Arrow Elecs., Inc. v. Ducommun,
Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)); see also STX, Inc. v. Trik Stik, Inc.,
708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (noting that "in the absence of any other
ground to justify transfer, the location of Defendant's records . . . falls woefully
short of the grounds necessary to justify superseding the plaintiff's choice of
forum").

   B. Availability and Convenience of Witnesses and Parties

Plaintiffs maintain that the best source of proof will be witnesses who can testify as to the actual day-to-day job duties of the safety coordinators employed by Defendant, such as the safety coordinators themselves and other employees who work in the field.  (Id.)  These individuals are located in Texas, Oklahoma, Arkansas, Louisiana, Colorado, and Pennsylvania.  (Id.)  In reply, Defendant argues that to the extent it is true that witness testimony will constitute the bulk of the evidence at trial, any venue in Texas will be inconvenient for out-of-state witnesses, and the relevant consideration becomes the difference in price between out-of-state flights to Houston versus San Antonio.  (Mot. at 7; Reply at 3.)  Because Houston has two airports, Defendant claims that there are more and generally cheaper flights to Houston than to San Antonio on a daily basis.  (Reply at 3.)

On balance, this factor – generally considered the most important, Mohamed, 90 F. Supp. at 774 – is neutral.  A "logical starting point for analyzing convenience is to consider the parties' residence."  Robertson v. Kiamichi R. Co., LLC, 42 F. Supp. 2d 651, 657 (E.D. Tex. 1999).  The three current Plaintiffs reside in the Western District of Texas, while Defendant's corporate headquarters are in the Southern District of Texas.  (Reply at 1; Mot. at 1.)  Courts often look next to the district or division where the majority of witnesses are located.  See Robertson,

9

42 F. Supp. at 657.  However, because Plaintiffs seek to certify their lawsuit as a

collective action, both parties acknowledge that many, if not most, potential

plaintiffs and witnesses are located outside of Texas.  (Mot. at 7; Reply at 6.)  That

being so, Defendant's most compelling argument with respect to this factor is its

argument regarding the relative number and cost of flights to Houston versus San

Antonio.  However, a review of flights to the cities in question indicates to this

Court that traveling to San Antonio from out of state is not significantly more

costly or inconvenient than traveling to Houston.

        Two other considerations weigh against Defendant's argument.  First,

as Defendant itself points out, when "key witnesses are employees of the moving

party," courts are less likely to transfer venue for the convenience of those

witnesses because "[i]n such cases, the moving party can compel those witnesses to

attend the trial."  Dupre v. Spanier Marine Corp., 810 F. Supp. 823, 825 (S.D. Tex.

1993); see also Carr v. Ensco Offshore Co., No. G-06-629, 2007 WL 760367, at *2

(S.D. Tex. Mar. 8, 2007) ("Generally, the Court gives very little consideration to

the convenience of witnesses who are still employed by Defendant.").  Defendant

admits that the "key witnesses" in this case will be its employees.  (Reply at 2 ("[I]t

can only be presumed the 'key witnesses' generally described by Plaintiffs are

current Select Energy employees and, as such, can therefore be asked to travel to

Houston, Texas to attend hearings, depositions, or trial just as easily as they can be dispatched to their regular work duties in the field.").)  Second, Defendant has failed to carry its burden of affirmatively demonstrating that transfer is warranted on this basis.  When a movant claims that transfer is warranted for the convenience of witnesses, "[t]he movant must specifically identify the key witnesses and outline the substance of their testimony."  Hupp v. Siroflex of Am., Inc., 848 F. Supp. 744, 749 (S.D. Tex. 1994).  Defendant has not identified any witnesses or the likely substance of any testimony.

      B.    Availability of Compulsory Process

Defendant contends that this factor weighs in favor of transfer because the majority of its current and former employees whose testimony will be relevant to Plaintiff's claims are "located or likely to be located in Houston, approximately 200 miles from San Antonio," and therefore "outside the range of compulsory process."  (Mot. at 6–7.)

Defendant is correct to assert that non-party witnesses located more than 100 miles from San Antonio are outside the Western District's subpoena power for deposition under Federal Rule of Civil Procedure 45(c)(3)(A)(ii) and any trial subpoenas for those witnesses to travel more than 100 miles would be subject to motions to quash under Federal Rule of Civil Procedure 45(c)(3).  See Fed. R.

11

Civ. P. 45; <u>Volkswagen I</u>, 371 F.3d at 205 n.4.  However, Defendant's claim that the majority of its current and former employees who may be called as witnesses are located in Houston is belied by its recognition elsewhere that many of its employees and potential witnesses in this case are located in Texas, Oklahoma, Arkansas, Louisiana, Colorado, and Pennsylvania.  (Mot. at 5.)  Furthermore, Defendant's general assertion that the majority of potential witnesses are located in Houston falls far short of the particularized showing required of a party moving for transfer.  <u>See</u> <u>Bank One, N.A. v. Euro-Alamo Inv., Inc.</u>, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002) (noting that the moving party must make a "particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony").  Finally, assuming for the sake of argument that the majority of non-party witnesses are, in fact, located in Houston, this Court may command witnesses located in Houston to attend trial in San Antonio despite the fact that they reside more than 100 miles away.  <u>See</u> Fed. R. Civ. P. 45(c)(3)(A)(ii).  Given that compelling out-of-state witnesses to appear will be equally problematic for the Western District of Texas and the Southern District of Texas and Defendant has offered the Court no supporting evidence that would indicate that the majority of potential witnesses are, in fact, located in Houston, this factor is neutral.

C.     Other Practical Problems Making Transfer Expeditious

Defendant suggests that the location of Plaintiffs' counsel in McAllen, Texas (240 miles from San Antonio), is relevant to the transfer analysis because it indicates that Plaintiffs' counsel has "already undertaken" a "significant travel commitment" by agreeing to represent Plaintiffs in San Antonio.  (Mot. at 8.) However, "the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." Volkswagen I, 371 F.3d at 206 (citing In re Horseshoe, 337 F.3d 429, 434 (5th Cir. 2003)).

II.     Public Factors

A.     Administrative Difficulties Flowing from Court Congestion

Defendant contends that the difference in caseload between the Western District of Texas and the Southern District of Texas weighs in favor of transfer.  Specifically, Defendant points out that during the 12-month period ending in September 30, 2012, 1,044 cases were filed per judge in the Western District, versus 787 per judge in the Southern District.  See Federal Court Management Statistics, September 2012 (hereinafter "Management Statistics").[1] When adjusted to account for the "weight" of various types of actions, 752 cases

---

[1] Available at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics /FederalCourtManagementStatistics/2012/comparison-districts-within-circuit-september-2012.pdf&page=5.

were filed per judge in the Western District, versus 568 per judge in the Southern

District.  Id.  Finally, Defendant observes that the San Antonio Division has a

shortage of judges as a result of the vacant judgeship left by Judge Furgeson's

move to the Northern District of Texas.  (Reply at 4.)

        The Court finds that this factor is neutral.  Defendant is correct to

point out that the Western District of Texas has a high caseload per judge.

However, the Court also notes that statistics not quoted by the Defendant indicate

that the Southern District of Texas is as busy, if not busier, than the Western

District.  For example, 310 civil cases were filed per judge in the Southern District

in the 12-month period preceding September 30, 2012, while 263 were filed per

judge in the Western District.  See Management Statistics.  The median elapsed

time between filing and trial of civil cases was 19 months in the Southern District

as opposed to 17.8 months in the Western District.  Id.  Finally, as is evident by

this case's reassignment to this Court, the San Antonio Division has recently

gained another senior judge to share the caseload, thus neutralizing Judge

Furgeson's move to the Northern District of Texas.

    B.   Remaining Public Interest Factors

        The three remaining public interest factors – the local interest in

having localized interests decided at home, the familiarity of the forum with the

14

governing law, and the avoidance of unnecessary problems of conflict of laws – do not weigh in favor of transfer.

"There is a local interest in having localized controversies decided at home." Am. Dredging Co. v. Miller, 510 U.S. 443, 448 (1994) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947)).  Thus, in Volkswagen II, the Fifth Circuit held that where "the accident [giving rise to the plaintiff's cause of action] occurred in the Dallas Division, the witnesses to the accident live and are employed in the Dallas Division, Dallas police and paramedics responded and took action, the Volkswagen Golf was purchased in Dallas County, the wreckage and all other evidence are located in Dallas County, [and] two of the three plaintiffs live in the Dallas Division," local interest weighed heavily in favor of transfer.  545 F.3d at 317.

Here, where the Plaintiffs seek to certify a collective action and the alleged conduct complained of occurred throughout a number of states, neither the Western District of Texas, San Antonio Division, nor the Southern District of Texas, Houston Division, has a strong local interest.  See Watson v. Hortman, No. 2:08CV81, 2009 WL 900744, at *1 (E.D. Tex. Mar. 31, 2009) (observing that "the local interest in adjudicating [a putative class action] is equal across the state" although several defendants and plaintiffs resided in the Southern District of

15

Texas).  Similarly, where, as here, the law to be applied is federal, both forums are equally familiar with its application.  See <u>J&J Sports Prods., Inc. v. Riviera</u>, No. H-10-1138, 2010 WL 3447719, at *3 (S.D. Tex. Aug. 30, 2010) (noting that the Houston and McAllen Divisions of the Southern District of Texas are equally capable of administering federal law).  There is no conflict of laws in this case.

Defendant urges this Court to consider two recent decisions in which courts concluded that transfer was appropriate.  In <u>Webb v. Settoon Towing, LLC</u>, No. 3–12–143, 2012 WL 5967962 (S.D. Tex. Nov. 28, 2012) and <u>Andrews v. A.C. Roman & Assocs., Inc.</u>, No. 5:12–CV–551, 2012 WL 6649149 (N.D.N.Y. Dec. 20, 2012), the plaintiffs sought to bring FLSA collective actions in their home districts, and the defendants successfully argued for transfer to the district in which they were headquartered.  However, both cases are distinguishable from the case at hand.

In <u>Webb</u> and <u>Andrews</u>, the respective courts found that a number of factors weighed in favor of transfer.  In <u>Webb</u>, the court found that the relative ease of access to sources of proof – documents, contracts, payroll information, vessel logs, and employee schedules – weighed in favor of transfer, as those sources were located at the defendant's headquarters in Louisiana.  2012 WL 5967962, at *3. The court also found that the convenience of potential witnesses weighed in favor

of transfer, since 50.2% of the putative class members resided in Louisiana, while only 16.47% resided in Texas.  Id. at *4.  Finally, the court noted that a forum selection clause in the employment contract between the defendant and its employees would compel prospective plaintiffs currently employed by the defendant to litigate their claims in Louisiana.  Thus, if the case brought by Webb, a former employee of the defendant, was permitted to go forward in Texas, only other former employees would be able to join the action.  The court concluded that transferring to Louisiana would "avoid the prospect of having two trials in different venues on the same issue–one in Texas for former employees like Webb and another in Louisiana for [current employees]. . . ."  Id. at *5.  Two significant factors weighed in favor of transfer in Webb: the location of the majority of putative class member witnesses in Louisiana, and the existence of a forum selection clause that would necessitate duplicative trials.  Neither consideration is relevant here.  The third factor relied upon by the Webb court – the location of sources of proof – is not, standing alone, enough to warrant transfer.

Similarly, in Andrews, the court found that a number of considerations militated in favor of transfer.  First, the court determined that the connections to the transferee forum, the Eastern District of New York, outweighed the connections to the venue chosen by the plaintiffs, the Northern District of New

York.  The court arrived at this conclusion by noting that the policies and practices at the center of the named plaintiffs' claims emanated from the defendant's center of operation in the Eastern District of New York; the plaintiffs were hired and trained at that center of operation; wages were calculated and paid from that center; a portion of the named plaintiffs' work was performed outside the Northern District of New York; and plaintiffs' supervisors were overseen by individuals located in the Eastern District.  2012 WL 6649149, at *6.  Similarly, the court found that the Eastern District was the locus of operative facts.  Id. at *8.  The court also concluded that the convenience of witnesses weighed in favor of transfer, where the named plaintiffs identified only themselves and one other witness in the Northern District, and the defendants identified eight witnesses in the Eastern District and two who lived close to or worked in the Eastern District. Id. at *7.

Unlike the defendant in Andrews, Defendant here has given the Court no reason to conclude that this case is intimately connected to Defendant's headquarters in Houston.  Defendant has not, for example, indicated that Plaintiffs were trained, hired, or supervised by individuals in Houston.  Nor have Defendants in this case presented any evidence that San Antonio has only tenuous connections to Plaintiffs' claims, as in Andrews.  See id. at *4 (noting that the only job

18

activities performed by the plaintiffs in the Northern District were investigations that took place there but originated from and were overseen by the Eastern District headquarters).  Furthermore, while the defendants in <u>Andrews</u> identified ten witnesses by name who resided or worked in the transferee venue, Defendants here have identified no specific witnesses whatsoever.  Finally, as Plaintiffs point out (doc. # 15), any comparison between <u>Andrews</u> and the present case is weakened by the fact that the transfer factors considered by courts in the Second Circuit and the weight accorded the various factors differ substantially from the transfer factors considered in the Fifth Circuit.  <u>See</u> <u>Andrews</u>, 2012 WL 6649149, at *5.

        In sum, the Court finds that Defendant has failed to clearly demonstrate that transfer to the Southern District of Texas, Houston Division, is "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Only one factor, ease of access to sources of proof, weighs slightly in favor of transfer.  The others are neutral.  It is not apparent to this Court that the transferee venue is more convenient than the venue chosen by the Plaintiffs, and where both the chosen venue and the transferee venue are inconvenient – for example, with respect to the availability and convenience of out-of-state witnesses – this Court "is as good [a] place as any other in which to try this particular case."  <u>Dupre</u>, 810 F. Supp. at 826.  Furthermore, the Court notes

19

that the cities of San Antonio and Houston are relatively close and not thousands of miles apart as can be the case in motions to transfer.  The inconvenience here is minimal at best.

CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404.  (Doc. # 7.)

IT IS SO ORDERED.

DATED: San Antonio, Texas, January 28, 2013.

_____
David Alan Ezra
Senior United States District Judge