UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SELENE MATEOS and<br>NOE MONTEMAYOR, On Behalf of<br>Themselves and All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SELECT ENERGY SERVICES, LLC,<br><br>*Defendant*. | ]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>] | CAUSE NO.: 5:12-cv-00529-DAE<br><br><br><br><br>JURY TRIAL DEMANDED<br><br><br>COLLECTIVE ACTION |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CONDITIONAL CERTIFICATION AND FOR
NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**

**I. SUMMARY**

This is an overtime case under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the FLSA). Plaintiffs formerly worked for Select Energy Services, LLC (Select Energy) as Safety Coordinators. Select Energy's Safety Coordinators, including Plaintiffs, all performed the same or similar duties and were paid in the same manner. Select Energy also admits that, regardless of where in the country its Safety Coordinators work[ed] or to whom they directly report[ed], Select Energy treated them all identically for purposes of the FLSA. It is this uniform policy that Plaintiffs challenge in this lawsuit, and it is also this uniform policy that makes Plaintiffs similarly-situated to all of Select Energy's Safety Coordinators for purposes of conditionally certifying a collective action. The Court should, therefore, conditionally certify this action as a collective action and to order issuance of notice to the potential opt-in plaintiffs of their right to join this suit.

## II. Argument

**A.  Plaintiffs' Evidence Is Characteristic Of What Is Typically Available At The Notice Stage**

Defendants pepper their response with derisions of the quantum of evidence supporting Plaintiffs' motion. Despite the fact (as Defendants repeatedly point out) this case has been on file for nearly a year, *no* party has yet to engage in *any* discovery.[1] The lack of meaningful discovery, nevertheless, is the norm at the conditional certification stage rather than the exception. This is precisely why the Fifth Circuit has explicitly and repeatedly stated that "'[b]ecause the court has minimal evidence [at this stage], th[e] determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.'" *Scherrer v. S.J.G. Corp.*, 2008 WL 7003809, *2 (W.D.Tex. 2008)(quoting *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).

At the notice stage court's decision is ***usually*** based only on the pleadings and any affidavits that have been submitted. *Scherrer*, 2008 WL 7003809, *2 (emphasis added)(citing *Mooney*, 54 F.3d at 1213-14). "'[C]ourts appear to require ***nothing more than substantial allegations*** that the putative class members were together the victims of a single decision, policy, or plan" that violates the FLSA. *Scherrer*, 2008 WL 7003809, *2 (emphasis added)(quoting *Mooney*, 54 F.3d at 1214 n. 8 (quoting *Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988)). Indeed, courts are authorized to grant conditional certification on the basis of the allegations in the pleadings alone. *Shaffner v. Cash Register Sales & Serv. of Houston, Inc.*, 2006 WL 1007542, *1 (S.D.Tex. April 17, 2006)(citations omitted).[2] Thus, the fact that

---

[1]  Factors beyond Plaintiffs' control, including Defendants' unsuccessfully urging their motion to transfer venue and the transfer and departure of the judge originally assigned to this case, have substantially contributed to the fact that full-fledged merits discovery has not yet commenced.

[2]  *See also*, *Rollison v. CC Services, Inc.*, 2006 WL 1596824 * 3 (S.D. Ill. 2006)("While the Plaintiffs have not provided any affidavits to support their assertions, their pleadings demonstrate that they have sufficiently alleged

Plaintiffs have minimal evidence available to them at this point is not only unremarkable, it is typical.[3]

B.  **Select Energy Considered Its Safety Coordinators To Be A Homogenous Group Regardless Of Geographic Location Or Supervisor And, Since This Is Precisely The Policy Being Challenged By This Lawsuit, Plaintiffs And The Potential Opt-Ins Are Similarly Situated**

1.  Because Select Energy Treated All of Its Safety Coordinators as Exempt They are Similarly-Situated

It is undisputed that Select Energy classified all of its Safety Coordinators as exempt from the FLSA's overtime requirements under the administrative exemption. *See* Doc. 5, ¶ 27.[4] Select Energy describes the Safety Coordinator position, both in "Summary" form and in setting out each of the "Essential Duties and Responsibilities" it requires, in substantively identical terms regardless of geographic location. *See*, *e.g.*, Exhibit 1, HSE Coordinator Job Description – Midland, Texas; Exhibit 2, HSE Coordinator Job Description – Carlsbad, New Mexico; Exhibit 3, HSE Coordinator Job Description – Canonsburg, Pennsylvania. Plaintiffs' descriptions of their job duties fit squarely within Select Energy's descriptions of the same positions. *Compare* Docs. 17-3, 17-4 & 17-5 with Exhibits 1, 2 & 3. These facts, in and of themselves, are sufficient to satisfy the "similarly-situated" burden at the notice stage. *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575, *5 (S.D.Tex. Oct. 11, 2012)("Ryland treats its salespersons as 'one homogenous group for purposes of the FLSA,' and that, along with the evidence and Ryland's

---

violations of the FLSA."); *Neagley v. Atascosa County EMS*, 2005 WL 354085 (W.D. Tex. Jan. 7, 2005)(Rodriguez, J.)(granting the "implied" motion for notice in plaintiff's complaint); *Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004)(allegations in complaint were "more than sufficient to support provisional certification"); *Butler v. City of San Antonio,* 2003 WL 22097250, at *2 (W.D. Tex. Aug.21, 2003); *Enterprise Concepts, Inc. v. Finnell*, 964 S.W. 2d 348, 351 (Tex. App.– Beaumont 1998, no pet.)(collecting cases).
[3] Select Energy's dim view of Plaintiffs' evidence is a glaring distinction to the position it took in requesting additional time to respond to Plaintiffs' motion. (Plaintiffs' filed "a factually-complex motion, containing three detailed affidavits . . ."). Doc. 18.
[4] "Select Energy admits all safety coordinators it employs are exempt administrative positions, and that the individuals holding such positions are not paid overtime, as alleged in Paragraph 20 of Plaintiff's Original Complaint."

admissions, is sufficient to demonstrate that the putative class members are similarly situated at the notice stage.")(quoting *Delgado v. Ortho–McNeil, Inc.*, 2007 WL 2847238, *2–3 (C.D.Cal. Aug.7, 2007)(other citations omitted).[5]  Therefore, Select Energy's argument that Plaintiffs have failed to identify a common policy that binds the proposed plaintiffs together is meritless.  In this suit, Plaintiffs challenge Select Energy's judicially-admitted policy of treating its Safety Coordinators as exempt from the FLSA, and they seek to represent the other employees also subjected to this policy.

Notwithstanding the foregoing, Select Energy argues that Plaintiffs duties differed from each other and from a previously unidentified Safety Coordinator, Mark Smith.  Of course, the similarly-situated standard does not require that the job duties of Plaintiffs and the potential class be identical, only that they be similar.  *Pedigo v. 3003 South Lamar, LLP*, 666 F.Supp.2d 693, 698 (W.D.Tex. 2009).  Upon examination, although Plaintiffs' duties may have varied to some degree (at least by Select Energy's characterization), Plaintiffs and Mark Smith all performed duties that fell within the rubric of the Safety Coordinator position even as Select Energy defines and delimits the position.  Compare Declaration of Carlos Lujan (Lujan), ¶¶ 9, 13-17 with

---

[5]   *See also*, *Zaniewski v. PRRC, Inc.*, 848 F.Supp.2d, 228 (D.Conn. 2012)(employers' nationwide use of uniform job descriptions, policies and coupled with the employer's uniform classification of all members of that group as exempt the compels the conclusion that the employees are similarly situated for purposes of an FLSA action challenging the validity of the exemption); *Ravenell v. Avis Budget Car Rental LLC*, 2010 WL 2921508, *4 (E.D.N.Y. July 19, 2010)(the plaintiffs' conditional certification argument was buttressed by the defendant's own job advertisement, job description, and training materials which revealed that all shift managers, wherever located, were treated as part of a category of similarly situated employees); *Neary v. Metropolitan Property and Cas. Ins. Co.*, 517 F.Supp.2d 606, 621-22 (D.Conn. 2007)("Neary claims that he and all putative class members were injured by the same Metropolitan policy – designation as exempt from the FLSA of automobile appraisers – which is sufficient to meet the lenient first-tier collective action standard.  To hold to the contrary would preclude certification of a collective action in any FLSA case where the defendant was asserting an administrative exemption defense."); *Foraker v. Highpoint Southwest, Servs., L.P.*, 2006 WL 2585047, *4 (S.D.Tex. Sep. 7, 2006)("[T]he preponderance of the evidence in the limited factual record before this Court supports Plaintiffs' contention that Merchandisers, and workers in the predecessor job category, Service Representatives, have been treated by Highpoint as a single class of employee and that all are similarly situated.  Highpoint fails to establish meaningful differences in job duties within the single job classification it used over the three years in issue.  Moreover, Highpoint's pay policies have consistently been applied to all workers in the job category in issue.  In sum, the Court is persuaded that Plaintiffs have met their burden to show that members of the proposed group of recipients for notice of this collective action are similarly situated.").

Exhibits 1, 2 & 3.  Indeed, their duties were similar enough for Select Energy to lump them all into the Safety Coordinator position and treat them all as exempt under the same, solitary exemption.

Select Energy also strenuously urges that, when employees are subject to different regional managers who apply different employment policies in differing ways to the employees under them, some courts have held that those employees are not similarly-situated.  Doc. 2-12, pp. 8-10.  Upon closer review of Lujan's declaration, however, Select Energy provides no evidence that this actually ever took place.  Lujan's affidavit merely says that the regional managers "delegate responsibility and discretion to Safety Coordinators as they see fit" and that, based upon such a hypothetical delegation, a Safety Manager "could" conduct a variety of different duties.  Doc. 21-3, ¶ 8.

This is no evidence that regional managers apply Select Energy's policies or procedures differently from each other or from how Select Energy intended those policies and procedures to be implemented.  This is no evidence that any regional manager's delegation of responsibility to any Safety Coordinator ever resulted in that employee performing job duties that were materially different than any other Safety Manager.  This is no evidence that the existence of different geographical regions with different regional managers had any affect or influence whatsoever on the way Safety Coordinators go about performing their jobs.  Select Energy, to be sure, is the only party in the position at this point to provide the Court with any such evidence (if it exists) and, even with an extra fourteen (14) days to respond to Plaintiffs' motion, it failed to do so.  In sum, while evidence that different regional managers – in fact – apply an employer's employment policies in materially different ways may be pertinent to a court's similarly-situated

analysis in the appropriate case, there is no evidence that any of Select Energy's regional managers ever actually did so.

    2.    <u>Select Energy's "Highly Individualized Fact Inquiry" Argument Improperly Attempts to Invoke its Exemption Defense at the Notice Stage</u>

Defendants argue that "determining whether an employee – like each of the Plaintiffs, opt-in Cedillo and Mark Smith – qualifies as exempt under the administrative exemption requires an individualized analysis of the employee's primary duties." Doc. 21-2, p. 12. Defendants conclude that these "necessarily fact intensive" inquiries preclude conditional certification. *Id.* at p. 13. For this proposition, Defendants rely almost exclusively on a litany of cases outside of the Fifth Circuit. *Id.* at pp. 12-13. These cases stand in "stark contrast" to the well settled rule in Texas district courts holding that exemptions are merits-based and not relevant at the notice stage." *In re Wells Fargo Wage and Hour Employment Practices Litig. (No. III)*, 2012 WL 3308880, *28 (S.D.Tex. Aug. 10, 2012)(collecting cases); *see also*, *Heeg v. Adams Harris, Inc.*, 2012 WL 5381767 *6 & n.2 (S.D.Tex. Oct. 31, 2012); *Walker v. Honghua Am., LLC*, 870 F.Supp.2d 462, 470-71 (S.D.Tex. 2012); *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 804-05 (S.D.Tex. 2010)(collecting cases). Select Energy, not Plaintiffs, bear the burden on the administrative exemption defense, and the defense is an issue for later in the litigation.

    3.    <u>Select Energy's "Highly Individualized Fact Inquiry" Argument is Disingenuous</u>

Beyond the fact that Select Energy's merits-based exemption defense is irrelevant, Select Energy's argument that the Court's consideration of the defense at this stage impermissibly invites a "highly individualized fact inquiry" is disingenuous. Select Energy freely admits that it treats all of its Safety Coordinators, regardless of geographic area, supervisor or otherwise as exempt under the FLSA's administrative exemption. Doc. 5, ¶ 27. It is completely disingenuous, then, for Select Energy to take the position in this litigation that its Safety

Coordinators cannot be treated as a similarly-situated group. *Delgado*, 2007 WL 2847238 at *2 ("Thus, Defendants have found sufficient similarity in the job duties of their sales representatives that they treat them as one homogenous group for purposes of the FLSA. It is somewhat disingenuous, then, for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative.")(citing *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D.Cal. 2005)("Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is 'exempt.'").[6]

C.     **Plaintiffs Have Sufficiently Shown A Reasonable Basis To Believe That Other Aggrieved Individuals Exist Who May Want To Join This Case**

Courts routinely consider the presence of additional consents beyond that of the named plaintiff as evidence supporting the averment that other similarly-situated employees exist who may want to join the case. *See*, *e.g.*, *Shaffner*, 2006 WL1007542 at *1 ("The addition of two of the three Plaintiffs after the inception of this case is persuasive evidence that a putative class does exist."); *see also*, *Thiessen v. General Electric Capital Corp.*, 996 F.Supp.1071 (D. Kan.1998)(pleadings plus opt-in forms sufficient for conditional certification); *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 406 (D.N.J.1988)(same). It is undisputed that Fernando Cedillo (Cedillo) opted-in to this action some four months after the complaint. *See* Doc. 11.

---

[6]     *See also*, *Tierno v. Rite Aid Corp.*, 2006 WL 2535056, *9 (N.D.Cal. Aug. 31, 2006)(in an overtime class action the defendant treated all store managers as a homogenous group for the purposes of exemption from the applicable labor laws and so its contention at the certification stage that each store manager position must now be individually examined to determine whether the employees are exempt or non-exempt "rings hollow").

Nevertheless, Select Energy decries that nobody else has opted-in since Cedillo did so over six (6) months ago.  *See* Doc. 21-2, p. 15.  Select Energy cites no authority for the proposition that such a passage of time since the last (pre-certification motion) opt-in is relevant to the Court's inquiry whatsoever.  Further, Select Energy's position begs the question – what would Select Energy have Plaintiffs do?  Actively recruit Safety Coordinators to join this case outside of the motion for conditional certification procedure?  Rather than stir-up inevitable allegations of barratry or of needlessly fomenting litigation Plaintiffs have, instead, chosen to move this Court for notification to potential plaintiffs.  "Indeed, identification of potential class members is part of the purpose of authorizing and notice."  *Neary*, 517 F.Supp.2d at 622-23.  Moreover, Plaintiffs need only show a *reasonable basis* that others may want to join.  *Heeg*, 2012 WL 5381767 at *4 ("[The defendant] argues that the plaintiffs have not provided evidence that other similarly situated, aggrieved individuals exist who would want to opt in to a certified collective action.  Under this first element, the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan.  The plaintiffs' burden at the conditional-certification stage is low.").

**D.     Select Energy Should Not Be Allowed To Rewrite Plaintiffs' Notice To Its Liking Or To Create A "Joint" Notice**

An FLSA notice "represents not an official communication from the Court, but is instead a communication from the plaintiff and plaintiffs' counsel to other prospective class members."  *King v. ITT Continental Baking Co.,* 1986 WL 2628, *3 (N.D. Ill. Feb. 13, 1986).  Thus, "**absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice**." *Id*. (emphasis added).  Applying this principle, district courts have turned away attempts by defendants to rewrite plaintiffs' proposed notice language.  *See, e.g.*, *Heitmann v. City of Chicag*o, 2004 WL 1718420, *3 (N.D. Ill. Jul. 30,

2004)("Although Defendant's proposed notice and consent forms would be adequate, the Court will not order the Plaintiff to use the Defendants' proposed forms."); *see also Gieseke v. First Horizon Home Loan Corp.*, 2006 WL 2919076, *1 (D. Kan. Oct. 11, 2006)(where parties submit competing FLSA notice forms, the court should "issue its rulings using plaintiffs' Notice as a starting point").  Accordingly, district courts across Texas have routinely approved Plaintiffs' proposed notice in virtually identical form and content.  *See*, *e.g.*, Exhibits 4-9.

1. The Notice Period Should be Three Years from the Filing of the Complaint

Select Energy asks the Court to restrict the scope of the class definition to those Safety Coordinators employed during the three (3) years prior to the date notice is first sent out rather than, as Plaintiffs have suggested, the three (3) years prior to the date the complaint was filed. Texas federal courts routinely mark the date of the filing of the complaint as the relevant point.[7] There is good reason for this.  Because of the FLSA's broad remedial purposes, at the conditional certification stage courts err on the side of being over inclusive in sending out notice to potential opt-ins.  *Goldman v. RadioShack Corp.*, 2003 WL 21250571, *9 n.6 (E.D.Pa. Apr. 16, 2003).  At the appropriate time and once discovery is complete, any opt-ins who are found to be completely outside the three-year period may simply be dismissed from the case.

---

[7] *Pedigo*, 666 F.Supp.2d at 695; 700-01 (complaint filed October 29, 2008; notice issued to potential opt-ins employed from October 28, 2005 forward); *Bernal v. Vankar Enters., Inc.*, 2008 WL 791963, *4 (W.D.Tex. Mar. 24, 2008); *Rousseau v. Frederick's Bistro, LTD*, 2010 WL 1425599 *1; *3 (W.D.Tex. Apr. 7, 2010)(original answer filed September 15, 2009; notice issued to potential opt-ins employed from August 11, 2006 forward); *Black v. Settlepou, P.C.*, 2011 WL 609884, *2; *5 (N.D.Tex. Feb. 14, 2011)(complaint filed July 19, 2010; notice issued to potential opt-ins employed from July 19, 2007 forward); *Oliver v. Aegis Comms. Group, Inc.*, 2008 WL 7483891, *4 (N.D.Tex. Oct. 30, 2008)(notice issued to potential opt-ins employed from May 15, 2005 forward); *Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 996 (E.D.Tex. 2011)(ordering notice to issue to all Field LVNs employed from three years prior to the date the complaint was filed forward); *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d 902, 905; 919-20 (S.D.Tex. 2010)(complaint filed January 26, 2010; notice issued to potential opt-ins employed from January 26, 2007 forward).

### 2.     Telephone Numbers are Routinely Included in Orders for Contact Information

Select Energy also objects to Plaintiffs' request for telephone numbers of the potential opt-ins.  Again, Texas federal courts routinely order the production of telephone numbers along with the class roster.[8]  Frankly, given Select Energy's repeated incantation that in order for it to set up its exemption defense an intensive fact-gathering process is necessary to determine the exact day-to-day job duties of each and every individual Safety Coordinator, a solid argument can be made that (separate and apart from any notice issue) Plaintiffs ought to already be in possession of the name, last known address and last known telephone number of all Safety Coordinators as a part of initial disclosures.  *See* FED. R. CIV. P. 26(a)(1)(A)(i)(requiring disclosure of the last known names, addresses and telephone numbers of all individuals likely to have discoverable information that a party may use in support of its claims *or defenses*)(emphasis added).  In any event, allowing Defendants exclusive use of the telephone numbers of potential witnesses (whether they opt-in or not) would violate the notion of fundamental fairness and the discovery rules.

### 3.     Select Energy does not Need Thirty Days to Compile a Class Roster

Dubiously, Select Energy claims it "needs more than merely ten days to provide a list of potential opt-ins . . . It will take considerable time to review personnel files and interview HSE Regional Managers to determine who are prior Safety Coordinators."  Doc. 21-2, pp. 17-18.  This is nonsense.  Citing the sworn testimony from its Corporate HSE Manager Select Energy has already represented to the Court that "[t]here are approximately 50 current and 15 to 20

---

[8] *See, e.g., Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498, *10 (S.D.Tex. Dec. 10, 2012); *Heeg*, 2012 WL 5381767 at *7; *Guillory v. PF & B Management, LP*, 2012 WL 5207590, *6 (S.D.Tex. Sep. 14, 2012); *In re Wells Fargo Wage and Hour Employment Practices Lit. (No. III)*, 2012 WL 3308880 at *29 n.15; *Tice*, 826 F.Supp.2d at 996; *McKnight*, 756 F.Supp.2d at 808; *Castillo v. Hernandez*, 2010 WL 4595811, *7 (W.D.Tex. Nov. 4, 2010); *Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897, *4 (S.D.Tex. Jun. 28, 2010); *Beall v. Tyler Techs., Inc.*, 2009 WL 3064689, *1 (E.D.Tex. Sep. 23, 2009).

former Safety Coordinators across all of the regions." Doc. 21-2, p. 3. It is quite clear, then, that Select Energy has already identified who the potential opt-ins. Select Energy's request for thirty (30) days is a stall tactic.

    4.    <u>Select Energy Should not be Allowed to Use the Notice to Deter Potential Plaintiffs from Joining this Action</u>

Select Energy seeks to deter potential plaintiffs from joining this case by insisting that the notice tell them that they if they have to sit for a deposition it will necessarily take place in Texas. First, Select Energy's rationale is unsound. There is no requirement that witnesses from out of state be deposed in Texas. To the contrary, depositions of opt-in plaintiffs typically take place in the locale of the individual's residence. *Smith v. Family Video Movie Club, Inc.*, 2012 WL 4464887, *2 (N.D.Ill. Sep. 27, 2012); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124, *3 (N.D.Cal. Nov. 15, 2011)(denying the defendant's motion to compel distant opt-in plaintiffs to appear for deposition in the forum); *Brasfield v. Source Broadband Servs., LLC*, 255 F.R.D. 447, 450 (W.D.Tenn. 2008)(remedial policies behind the FLSA justified the plaintiffs' motion for protective order requiring depositions of opt-in plaintiffs living more than one hundred (100) miles from Memphis to be taken in the locale of the opt-in's residence).[9] One court in the Western District of Texas has already addressed the identical objection and determined that Plaintiffs' proposed notice is sufficient as worded. *Gandhi v. Dell Inc.*, 2009 WL 3427218, *2 (W.D.Tex. Oct. 20, 2009)("Another area where the parties differ is what language should be included in the section entitled 'What happens if I join the lawsuit?' Specifically, the parties differ on language regarding discovery potential plaintiffs may be required to participate in. The

---

[9]     *See also*, *e.g.*, *Roussell v. Brinker Intern., Inc.*, 2010 WL 1881898, *1 (S.D.Tex. Jan. 13, 2010)("In August 2006, this Court granted Plaintiffs' unopposed motion to distribute notice of this collective action to a national class of potential opt-in plaintiffs. Over 3,500 individuals consented to join the collective action in response to the distributed notice. Over the course of discovery, the parties conducted approximately 120 depositions held in 26 states.").

language requested by Dell could be viewed as intended to deter plaintiffs from opting in, and it is not at all clear at this time whether in fact the requested language regarding the need to travel for depositions is even accurate. On this point, the Court believes that Plaintiffs' proposed notice is sufficient and no modification is necessary.").

Similarly, Select Energy asks the Court to scare off potential plaintiffs by ordering that the notice tell opt-ins that, if the case goes to trial, they will have to travel to Texas to testify. First, Select Energy does not explain why these witnesses could not appear by deposition. Second, Select Energy also ignores the fact that collective actions are representative actions and, therefore, it is not at all certain that any particular individual who opts-in would be required to provide trial testimony, in whatever form, at all. *See*, *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540 (S.D.Tex. 2008)(collecting cases).

Select Energy also seeks to chill the opt-in rate by including language that, if Plaintiffs are ultimately unsuccessful on their claims, the opt-ins may be responsible for Select Energy's litigation costs. Courts have denied including such language about costs in the opt-in notice because the remote possibility that such costs for absent class members would be other than *de minimis* is outweighed by the significant deterrent effect the language would have on opt-in participation. *Siewmungal v. Nelson Management Group Ltd.*, 2012 WL 715973, *4 (E.D.N.Y. Mar. 3, 2012); *Harhash v. Infinity West Shoes, Inc.*, 2011 WL 4001072, *5 (S.D.N.Y. Aug. 25, 2011).

  5. The Contingent Nature of Plaintiffs' Counsel's Representation in this Case Does Not Guarantee that Opt-Ins Will Recover Less

Finally, Select Energy asks the Court to discourage opt-ins by implying that they will forfeit a substantial portion of their recovery to Plaintiffs' lawyers. Select Energy does not have (nor is it entitled to have) any information regarding the fee arrangement between Plaintiffs' and

their counsel. Thus, Select Energy's certainty on this matter is speculation. Further, should Plaintiffs prevail, an award of attorneys' fees in mandatory. 29 U.S.C. § 216. It is not at all uncommon for attorneys' fees awards to exceed the plaintiffs' recovery and, in fact, the Fifth Circuit has approved attorneys' fee awards that are several times the amount of plaintiffs' recovery. *Roussell*, 2010 WL 1881898 at *11 (collecting cases). At this early stage, Select Energy could not have any certainty regarding: (1) whether there will be an attorneys' fee award in this case; (2) if so, how much that award will be; or (3) given an award, how that award will affect the fee arrangement between Plaintiffs' and their counsel. Despite its purported confidence that "[t]here is no likely scenario where a contingency attorney fee would not reduce the recovery for the claimants," Select Energy's proposed language is unwarranted. Doc. 21-2, p. 18. Again, several courts have approved Plaintiffs' language. *See* Exhibits 4-9.

E.     **Select Energy's Nebulous Evidentiary Commentary Warrants No Attention From The Court**

At various points in its response, Select Energy makes vague, evidentiary commentary with respect to Plaintiffs' motion. *See*, *e.g.*, Doc. 21-2, p. 9 ("These affidavits are [sic] contain merely contain conclusory hearsay statements."); *Id.* at p. 11 (". . . even though Plaintiffs have submitted evidence, albeit conclusory and hearsay evidence . . .); *Id.* at p. 14 ("While Plaintiffs have presented some evidence (albeit inadmissible conclusory hearsay evidence . . ."). Because of the lack of any specificity whatsoever, Plaintiffs hesitate to call these comments "objections." Out of an abundance of caution, however, Plaintiffs note the following for the Court.

A strict application of the Federal Rules of Evidence does not comport with the relatively low evidentiary burden imposed by the FLSA conditional certification approach. *Howard v. Securities Security Services, USA Inc.*, 2009 WL 140126, *3 (N.D. Ill. Jan 20, 2009). As a result of the more lenient conditional certification stage, "'Plaintiffs need not come forward with

evidence in a form admissible at trial.'" *White v. MPW Indus Servs Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006)(quoting *Coan v. Nightingale Home Healthcare Inc.*, 2005 WL 1799454, *1 n.1 (S.D. Ind. Jun 29, 2005)). One court in the Western District of Texas recently recognized this same principle. *See*, *Vargas v. HEB Grocery Co., LP*, 2012 WL 4098996, *1-2 (W.D.Tex. Sep. 17, 2012)(recognizing the "modest factual showing" required at the conditional certification stage and refusing to strike the plaintiffs' declarations for failing to meet the admissibility requirements that would otherwise apply to a dispositive motion). This somewhat relaxed approach to the admissibility standards is appropriate at this stage because, as the *Vargas* correctly noted, "the determination that the parties are similarly situated is merely a preliminary one, and that determination may be modified or reversed after discovery." *Id.* (citation omitted).

### III.  CONCLUSION

Plaintiffs have met and exceeded the lenient burden for conditional certification and the issuance of court-approved notice. Select Energy's opposition to conditional certification in this case is meritless or, at the very least, an attempt to prematurely try the merits of its defenses to Plaintiffs' claims. Accordingly, Plaintiffs respectfully request that the Court: 1) conditionally certify this action as a collective action; 2) authorize dissemination of the suggested notice to potential members of this collective action; 3) order production of the names, addresses and telephone numbers of the potential class members in order to efficiently distribute the suggested notice; and 4) award Plaintiffs all other relief to which they may be justly entitled.

        Respectfully submitted,

           **/S/ Michael K. Burke**
By:_____
        Michael K. Burke
        mburke@mmguerra.com
        Texas State Bar No.: 24012359
        S.D. of Tex. No.: 24356
        *Attorney-In-Charge for Plaintiff*
3900 N. 10th St., Suite 850
McAllen, Texas 78501
(956) 682-5999 – Telephone
(888) 317-8802 – Facsimile

**Of Counsel:**

Michael M. Guerra
mike@mmguerra.com
Texas State Bar No.: 00787603
S.D. of Tex. No.: 18850
**THE LAW OFFICES OF MICHAEL M. GUERRA**
3900 N. 10th St., Suite 850
McAllen, Texas 78501
(956) 682-5999 – Telephone
(888) 317-8802 – Facsimile


Alfredo Z. Padilla
padillaattorney@sbcglobal.net
Texas State Bar No.: 15405800
**LAW OFFICE OF ALFREDO Z. PADILLA**
104 North 5th St.
P.O. Drawer 355
Carrizo Springs, Texas 78834
(830) 876-9123 – Telephone
(830) 876-9531 – Facsimile

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon and forwarded to the following counsel of record in compliance with the Federal Rules of Civil Procedure via the Western District's CM/ECF system on this the 8th day of May, 2013.

W. Jackson Wisdom
James M. Cleary, Jr.
**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
808 Travis, Suite 1800
Houston, Texas 77002

                **/S/ Michael K. Burke**
                _____
                Michael K. Burke