IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SELENE MATEOS and NOE MONTEMAYOR, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | CV NO. 5:12-cv-00529-DAE |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SELECT ENERGY SERVICES, LLC, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION AND
<u>NOTICE TO POTENTIAL OPT-IN PLAINTIFFS</u>

Before the Court is Plaintiffs' Motion for Conditional Certification and Notice to Potential Opt-In Plaintiffs. (Dkt. # 19.) Defendant filed a response opposing conditional certification. (Dkt. # 22.) On October 10, 2013, this Court held a hearing to discuss the merits of Plaintiffs' request for conditional certification. Having considered the parties' arguments, the record, and the applicable law, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification.

1

## BACKGROUND

Defendant Select Energy Services, LLC ("Select Energy"), provides water sourcing, transfer, reuse, and disposal services to oilfield operators throughout the United States and Canada. Select Energy operates eight regional office facilities located throughout the United States in regions where oil and gas production occurs.

Within each region, Select Energy employees are divided into operations or support. Operations employees perform the work Select Energy offers to clients, such as laying water pipe, transporting water, and construction of oilfield locations. Support employees administer support to operations personnel.

A Heath, Safety, and Environmental Manager ("HSE Regional Manager") is assigned to each region. There are eight HSE Regional Managers; one for each region. Each region also employs several Safety Coordinators, each of whom reports to his or her respective HSE Regional Manager. Approximately fifty current and fifteen to twenty former Safety Coordinators reside across all of the regions. Safety Coordinators are involved in a variety of safety-related issues across various job sites within their assigned region, including participating in job-safety meetings, conducting Job Hazard Analyses, responding to safety incidents, and documenting safety issues. Select Energy pays Safety Coordinators a flat salary and does not provide additional compensation for overtime.

Selene Mateos ("Mateos"), Noe Montemayor ("Montemayor"), and Fernando Y. Cedillo ("Cedillo") (collectively, "Plaintiffs") formerly worked for Select Energy as Safety Coordinators in the South Texas region. On May 30, 2012, Plaintiffs Mateos and Montemayor filed a claim against Select Energy for allegedly violating the Fair Labor Standards Act ("FLSA"), asserting that despite working in excess of forty hours per week, they were not compensated for their overtime hours. (Dkt. # 1.) On September 8, 2012, Plaintiff Cedillo submitted a notice of filing consent to participate as a plaintiff in this collective action. (Dkt. # 11-1.)

## DISCUSSION

The FLSA requires certain employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) of the FLSA creates a cause of action for employees against employers that are allegedly violating the overtime compensation requirements. Section 216(b) also permits an employee to bring suit on "behalf of himself . . . [a]nd other employees similarly situated." This section creates an "opt-in" scheme whereby potential plaintiffs must affirmatively notify the court of their intention to become parties to the suit. See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such an action unless he gives his

consent in writing to become a party and such consent is filed in the court in which such action is brought.").

Whether a claim should go forward as a representative action under § 216(b) requires the court to determine whether the plaintiffs are "similarly situated," and this determination is generally made by using one of two analyses: (1) the two-stage analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263, 266–67 (D. Colo. 1990).  See Mooney v. Amarco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (declining to decide which of the two analyses is preferred), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 90–91 (2003); see also Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 518–19 (5th Cir. 2010) ("We have not yet ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action.").  In the absence of Fifth Circuit guidance, district courts in the Fifth Circuit have generally adopted the Lusardi two-stage approach to determine whether a collective action should be certified under the FLSA.  See, e.g., Pedigo v. 3003 South Lamar, LLP, 666 F. Supp. 2d 693, 696–97 (W.D. Tex. 2009); Valcho v. Dallas Cnty. Hosp. Dist., 574 F. Supp. 2d 618, 621–22 (N.D. Tex. 2008).  This Court will apply Lusardi's two-stage approach in this case.

A.  The Lusardi Two-Stage Analysis

Under Lusardi, the court first determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class.  Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213–14).  "If they are, notice is sent and new plaintiffs are permitted to 'opt-in' to the lawsuit."  Id.  Second, after discovery is largely complete, the court then makes a final determination regarding whether all plaintiffs are sufficiently similarly situated to proceed together in a single action.  Id.  If they are not similarly situated, then the court decertifies the class, the opt-in plaintiffs are dismissed, and the class representatives are allowed to proceed on their individual claims.  See Johnson v. TGF Precision Haircutters, Inc., 319 F. Supp. 2d 753, 754–55 (S.D. Tex. 2004).  This Court's current inquiry need only address the merits of the first stage.

B.  Similarly Situated

Plaintiffs seek to conditionally certify a class consisting of employees designated as Safety Coordinators.  (Dkt. # 19.)  As described above, the statutory standard for bringing a collective action under the FLSA requires that the claimants be "similarly situated."  Generally, courts have ruled that "similarly situated" need not mean "identical."  Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (quoting Jesiek v. Fire Pros, Inc., 275 F.R.D. 242,

246 (W.D. Mich. 2011)).  To satisfy the "similarly situated" standard, Plaintiffs must show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Mooney, 54 F.3d at 1214 n.8 (quoting Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)).  The class member representatives "must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions."  Ryan v. Staff Care, Inc., 497 F. Supp. 2d 820, 824–25 (N.D. Tex. 2007).  Although Plaintiffs bear the burden of proof to make this factual-nexus showing, this is a "fairly lenient standard" due to the lack of evidence available during the first stage.  Mooney, 54 F.3d at 1214.  Instead, a court decides whether to conditionally certify "based only on the pleadings and any affidavits which have been submitted."  England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 508 (M.D. La. 2005).

Though Plaintiffs are held to a "lenient standard," the decision to create an opt-in class under § 216(b) remains soundly within the discretion of the district court.  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).  That is because "the relevant inquiry in each particular case is whether it would be appropriate to exercise the court's discretion to facilitate notice" to potential plaintiffs.  Valcho, 574 F. Supp. 2d at 621–22 (internal citation and quotation marks omitted).

Here, Plaintiffs satisfy the first stage of the <u>Lusardi</u> two-stage analysis warranting conditional certification. Plaintiffs proffer evidentiary support in their Motion for Conditional Certification demonstrating that Safety Coordinators perform substantially identical tasks. (<u>See</u> Dkt. # 19, Ex. 1 ("Mateos Decl.") ¶ 3 (detailing that as a Safety Coordinator, Mateos inspected several jobsites, observed crews to ensure they were following proper safety guidelines, investigated accidents, and conducted meetings discussing safety issues); Dkt. # 19, Ex. 2 ("Montemayor Decl.") ¶ 3 (explaining that his job as a Safety Coordinator involved traveling from jobsite to jobsite, providing inspection and safety observation); Dkt. # 19, Ex. 3 ("Cedillo Decl.") ¶ 3 (detailing how his role as a Safety Coordinator involved providing inspection and safety observation at several jobsites, investigating accidents, and conducting meetings to discuss safety issues and actual compliance trainings).)

Plaintiffs also submit that as Safety Coordinators, they were subject to Select Energy's policy of providing a flat salary for all hours including overtime hours. (<u>See</u> Mateos Decl. ¶ 5 ("I would work an average of about ninety (90) hours per week but I would get a flat salary with no extra compensation for working extra hours based on a 40 hour week."); Montemayor Decl. ¶ 3 ("I would work an average of about 55 hours per week but I would get a flat salary with no extra compensation for working more than 40 hours in a week."); Cedillo Decl. ¶ 3

("I would work an average of about seventy five (75) to ninety (90) hours per week but I would get a flat salary with no extra compensation for working extra hours based on a 40 hour work week.").)

Most importantly, Plaintiffs demonstrate that they know of at least three additional Safety Coordinators who perform similar duties as Safety Coordinators and are also subject to Select Energy's compensation policy for Safety Coordinators. (See Mateos Decl. ¶ 5 (identifying Rolando Cedillo as another Safety Coordinator who worked similar hours and was paid in the same fashion); Montemayor Decl. (identifying Sergio Avila as another Safety Coordinator who worked similar hours and was paid in the same fashion); Cedillo Decl. ¶ 5 (identifying Sergio Avila and Mark Smith as other Safety Coordinators who worked similar hours and were paid in the same fashion).) There may be additional Safety Coordinators who perform similar functions and are subject to the same compensation policy. According to Select Energy, there are approximately fifty current and fifteen to twenty former Safety Coordinators across all of the regions.

Moreover, "the joinder of additional plaintiffs after the inception of the case is persuasive evidence that a putative class does exist." Pedigo, 666 F. Supp. 2d at 698. Here, Cedillo submitted a Notice of Filing Consent to join the litigation after Mateos and Montemayor had filed suit. (See Dkt. # 11.)

Defendant disputes that conditional certification is warranted. Defendant first asserts that conditional certification is inappropriate because the particular job duties of Safety Coordinators are dictated by the local HSE Regional Managers at each of Select Energy's regional offices. But Defendant has not shown that the job duties vary among Select Energy's eight regions. Furthermore, this argument fails to recognize that the decision to conditionally certify a class at the notice stage is lenient, primarily because little or no discovery has been completed at the notice stage. See Bernal v. Vankar Enters., Inc., SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008). Plaintiffs have not had the opportunity to gather information regarding each of Select Energy's additional regional offices.

Defendant also asserts that although Cedillo and Montemayor were primarily involved with safety issues in the oil yards, Mateos and the other individuals named in Plaintiffs' Declarations do not perform similar job functions. For example, Defendant argues that even though Mateos was listed as a "Safety Coordinator" on her Performance Evaluation Form, Mateos performed almost exclusively training-related tasks that were substantially different from traditional Safety Coordinators like Cedillo and Montemayor. Defendant also argues that Mark Smith, an individual identified as a potential plaintiff, was primarily involved in ensuring the rules of the United States Department of Transportation, Federal

Motor Carrier Safety Administration, and Texas Department of Transportation were properly being followed because of his experience with Department of Transportation rules and regulations. Thus, Defendant explains, the primary duties of Mateos and Smith were materially different than the duties of Cedillo and Montemayor.

Defendant's second assertion fails to demonstrate that Plaintiffs are not "similarly situated." Plaintiffs have shown two overarching themes that each of their tasks required: performing safety observations and investigating accidents. Plaintiffs also demonstrated that they each allegedly worked more than forty hours per week without additional compensation. See St. Luke's Episcopal Hosp. v. Villarreal, 751 F. Supp. 2d 902, 918 (S.D. Tex. 2010) (holding that potential class members are "similarly situated" to the named plaintiffs if they are "similarly situated" with respect to their job requirements and pay provisions). It is understandable that, among the more than fifty Safety Coordinators Select Energy employs and the fifteen to twenty Safety Coordinators Select Energy formerly employed, there would be some slight difference in the tasks performed among the various regions and the various HSE Regional Managers. However, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement." Tolentino v. C & J Spec–Rent Servs., Inc., 716 F. Supp. 2d 642, 651 (S.D. Tex. 2010). As several district courts have instructed, the positions

"need not be identical" for conditional certification. <u>Pedigo</u>, 666 F. Supp. 2d at 698; <u>c.f.</u> <u>St. Luke's Episcopal Hosp.</u>, 751 F. Supp. 2d at 918 ("If the job duties among putative class members <u>vary significantly</u>, then class certification should be denied." (emphasis added)). Plaintiffs' job functions are sufficiently similarly situated to warrant conditional certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification is **GRANTED**. The above-entitled case is hereby conditionally certified as a collection action.

The parties shall submit a <u>joint</u> proposed notice to potential opt-in plaintiffs within **TEN (10) DAYS**. If for whatever reason the parties cannot agree to a joint proposed notice, the parties shall submit a joint proposed notice to the extent the parties do agree. The parties shall then submit their separate proposed provisions and the reasons for the provision's inclusion in (or exclusion from) the proposed notice within the ten day timeframe.

Defendant Select Energy shall provide Plaintiffs' counsel with a list of names and last known addresses for all Safety Coordinators employed by Select Energy Services, LLC during the period of October 10, 2010 to October 10, 2013 within **THIRTY (30) DAYS**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 10, 2013.

_____
David Alan Ezra
Senior United States Distict Judge